# CHARLESTON.

44  197
s46  489

GROBE *v.* ROUP *et al.*

Submitted September 16, 1897—Decided December 4, 1897.

1. PARTNERSHIP—*Partnership Funds—Injunction.*
   The active member of a firm deposits the funds thereof, to the amount of one thousand eight hundred dollars, in a bank, in the firm name. The other member of the firm (who is insolvent), without the consent or knowledge of his partner, wrongfully obtains a certificate in his individual name for such deposit, and transfers it to a foreign bank. At the instance of the active member of such firm, a court of equity will enjoin the application of such funds to the payment of such certificate until the partnership can be settled in a suit for that purpose.   (p. 200.)

2. PARTNERSHIP—*Partnership Funds—Parties.*
   The holder of such certificate is a proper party to such suit. (p. 201.)

Appeal from Circuit Court, Cabell County.

Action by John T. Grobe against C. W. Roup and others. From a decree refusing to dissolve a temporary injunction the Pomeroy National Bank appeals.

*Amended and Affirmed.*

CHARLES E. HOGG, for appellant.

SIMMS & ENSLOW, for appellee.

DENT, JUDGE :

Appeal from the Circuit Court of Cabell County, taken by the Pomeroy National Bank, from a decree refusing to dissolve a temporary injunction granted in the case of

John T. Grobe, plaintiff, against C. W. Roup *et al.*, defend-ants. The following is a statement of facts furnished by the counsel for the appellant: On the 14th day of May, 1896, and some time prior thereto, the appellee, John T. Grobe, and one C. W. Roup were engaged in business as partners under the firm name of Roup & Grobe. It was understood and agreed between themselves (but of which the public had no knowledge or notice of any sort) that J. T. Grobe was to have charge of the cash accounts of the firm, to deposit the moneys of the concern in the Hunting-ton National Bank, pay the bills of the firm, and draw all the firm checks. On the 14th day of May, 1896, or about that time, a check of twenty-five dollars was given, payable to said C. W. Roup, and drawn by the said J. T. Grobe, in the firm name, against the funds of the firm deposited in the said Huntington National Bank; and on that day the said Roup presented this check to the bank, and it was paid. At that time the said C. W. Roup, then being a member of the said firm of Roup & Grobe, drew a check for one thousand eight hundred dollars, in the name of his firm, payable to himself, and drew the money on it, and then deposited said money, in his own name, in the Hunt-ington National Bank. The Huntington National Bank at the same time, at the request of the said C. W. Roup, gave him, the said Roup, a certificate of the deposit, of which the following is a copy: "$1,800. The Huntington Na-tional Bank. Huntington, W. Va., May 14th, 1896. C. W. Roup has deposited in this bank eighteen hundred dol-lars, payable to the order of himself, in current funds, on the return of this certificate properly endorsed. J. K. Oney, Cashier. [Countersigned] C. M. Gohen, Teller. Certificate of deposit, not subject to check. No. 14,007." A short time after this, to-wit, on the 18th day of May, 1896, the said Roup transferred the said certificate of de-posit to the appellant, after properly indorsing the same. The appellant gave the said Roup, in payment therefor, one hundred dollars in money, and a certificate of deposit of its own, payable to the order of H. M. Roup, for one thousand seven hundred dollars. After the appellant be-came the owner of said certificate of deposit, it promptly forwarded the same to the Bank of Huntington for pay-

ment; but before the said bank had cashed the said certificate of deposit, John T. Grobe, the appellee, brought a suit to dissolve the partnership existing between the said Roup and Grobe, and to settle the accounts thereof, to which he made parties, not only his partner, C. W. Roup, but also the said Huntington National Bank and this appellant. At the instance of the plaintiff an injunction was awarded upon said bill, enjoining the said Huntington National bank from paying over the said one thousand eight hundred dollars, the amount of the certificate of deposit, to the said Pomeroy National Bank; asking in said bill that the proceeds of said certificate be applied to the payment of the debts of Roup & Grobe. At the June term, 1896, of the circuit court of Cabell county, wherein this suit was pending, the appellant, the Pomeroy National Bank, appeared, by Charles E. Hogg, its attorney, and moved the court to dissolve the injunction awarded in the cause. And on the 9th day of July, in the same court, the said Pomeroy National Bank filed its separate answer to the plaintiff's bill; and the parties agreed upon the facts in the case (the agreement thereof being reduced to writing and signed by the parties, and also filed as part of the record in the cause); and thereupon the said Pomeroy National Bank, by its attorney, renewed its motion to dissolve said injunction, which motion was argued by counsel for appellee and appellant; and the court refused to dissolve the said injunction, but overruled the said motion to dissolve, and continued the injunction until the final hearing of the cause. From this decree overruling the appellant's motion to dissolve the injunction in this case, an appeal to this Court has been taken.

The fund in controversy is, admittedly, social assets, which one partner is attempting wrongfully to divert to his own private use and benefit, to the injury and against the rights of the other partner and the social creditors. Social assets cannot be diverted from the payment of social debts to individual purposes without the consent of both partners, and then not in fraud of the social creditors. *Baer* v. *Wilkinson*, 35 W. Va., 422, (14 S. E. 1); *Darby* v. *Gilligan*, 33 W. Va., 246, (10 S. E. 400). The whole transaction appears to have been a Randolph Mason scheme, in

which the Huntington National Bank is not free from guile. It received the funds on deposit from the partner Grobe in the partnership name. He made the deposits and gave checks in the firm name. At the very time of the transaction he had given a check for twenty-five dollars in favor of the other partner, which was presented and paid; and yet the bank, without consulting the partner making the deposits and drawing the checks, allowed the other partner, Roup, to change the deposit from the partnership to his individual name, and then gave him a certificate of deposit, which, if negotiable, as claimed, would permit him to convert the money to his own uses, in fraud of the partnership. When a bank has the funds of the partnership on deposit, and it knowingly permits a member of the firm, without the consent or knowledge of the other members thereof, to convert such fund to his individual use, in fraud of the partnership, it will be held liable to the partnership for the funds so misapplied. *Billings* v. *Meigs*, 53 Barb. 272. The bank's knowledge was sufficient to put it on inquiry as to the good motives of the partner, without the express consent of the other member of the firm, in transferring so large a partnership fund to his individual account, and by an express certificate of deposit, supposed to be negotiable, placing the fund beyond the reach of the firm, especially in the light of the admission that the derelict partner is hopelessly insolvent. The injunction in this case does not prevent the Huntington National Bank from paying the certificate of deposit, if it desires to do so; but it does prevent it from paying such certificate with the partnership funds, intrusted to its care as such,—its object being merely to prevent the consummation of attempted fraud, which is recognized equitable jurisdiction, and at the same time relieve the bank, if possible, from being made the innocent, in intention, yet legally responsible, dupe of a fraudulent scheme. The plaintiff is only interested in the partnership fund, and he has a lien thereon for the benefit of himself and the creditors of the firm, which a court of equity will preserve and enforce. Neither the Huntington National Bank nor Roup has appeared or made defense to the bill; but it, as yet, stands fully confessed, and undoubtedly presents a *prima facie* case as to

them.  The Pomeroy National Bank claims through them, and is entitled to all their rights, and no more, as to the fund in controversy; and hence it was a necessary party to the suit, for the purpose of protecting its interests, and not to have made it a party would have been error.  Bates, Partn. §§ 988, 1039.

In drafting the decree complained of, a clerical error, having the effect of a judicial determination or enlargement of the injunction, to the injury of the appellant, was committed in the recital of the injunction awarded, in that the court did not limit the nonpayment of the certificate to the fund in controversy.  The original injunction, as granted, prohibited the Huntington National Bank "from paying over the said fund," while the decree recites it as having enjoined "the Huntington National Bank from paying to the said Pomeroy National Bank the certificate of deposit," without adding thereto "out of the fund in controversy."  The Huntington National Bank has the right to pay this certificate, if it wishes so to do, out of any other funds than the social assets of the firm of Roup & Grobe; and the Pomeroy National Bank may be able to legally compel it to do so, and should be left at perfect liberty to bring its suit for this purpose.  To this extent the decree will be amended and affirmed, with costs to appellant.

*Amended and Affirmed.*